August 14, 1978

## 78-45   MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

### Veterans Preference Act (5 U.S.C. §§ 2108, 3309-3320)—Application to Attorney Positions

In 1977 the Civil Service Commission undertook an evaluation of the employment procedures of the Department of Justice. It concluded that those procedures concerning Schedule A and B excepted-service position (*see* the Commission's regulations, 5 CFR § 213.3101 *et seq.*) did not satisfy the requirements of the Veterans Preference Act of 1944, as amended, 5 U.S.C. §§ 2108, 3309-3320. The Commission's Evaluation Manager informed the Department's Director of Personnel that the Department is required to:

> . . . revise current internal procedures for processing Schedule A and B applications to include numerical ratings for best qualified [applicants] and crediting veterans preference in order to fully comply with the requirements of [the Veterans Preference Act].

After some ambivalence by Commission officials whether to insist on this numerical rating system, we understand that they now do insist on its implementation.

A number of other agencies have resisted the rating system, asserting that its adoption would effectively negate affirmative action efforts to hire women and minorities. We express no opinion as to how such a system would affect affirmative action efforts. The issue we do address is whether the Commission may require that attorneys be hired pursuant to such a system. For the reasons that follow we believe that the Commission does not have such authority.

Section 3309, title 5, U.S. Code, the key provision concerning veterans' preference, provides that:

> A preference eligible who receives a passing grade in an examination for entrance into the competitive service is entitled to additional points above his earned rating, as follows—
>
> (1) a preference eligible under section 2108(3)(C)-(G) of this title—10 points; and
>
> (2) a preference eligible under section 2108(3)(A) of this title—5 points.

Section 2108, title 5, defines a "preference eligible" as an honorably discharged veteran who served in the Armed Forces under such conditions as are set forth in that section. The 10-point preference provided by § 3309(1) is directed to certain disabled veterans, and in some cases to their relatives or survivors. The 5-point preference is directed to certain nondisabled veterans.

The problem arises because under 5 U.S.C. § 3320 preference eligibles must be selected for appointment in the excepted service in the same manner as are preference eligibles in the competitive service. Literal compliance with this provision is impossible because positions in the excepted service are not filled pursuant to civil service examination. Thus, in the excepted service there are no examination scores to which preference points may be added.

In most instances the decision to examine for positions rests with the Commission. Section 3302, title 5, authorizes the President to except positions from the competitive service and Executive Order No. 10577, 3 CFR 218 (1954-1958 Compilation) delegated this authority to the Commission. *See* 5 CFR § 6.1. Therefore, the Commission may require examinations for most excepted-service positions simply by removing them from the excepted service. And, if the Commission could require that these positions be filled on the basis of examinations it appears that it could require a rating system, because the proposed rating system is actually a form of examination. *See* 2 discussion pp. 4-5, *infra*.

Attorney positions are unique, however, in that the Commission is prohibited by statute from requiring that they be filled pursuant to examination. Thus, Commission authority to require a rating system for attorneys cannot be said to derive from its authority to require examinations. Congress in the Commission's 1943 appropriation act, 57 Stat. 173, restricted the Commission's authority over attorney hiring. That restriction provided that:

> No part of any appropriation in this Act shall be available for the salaries and expenses of the Board of Legal Examiners created in the Civil Service Commission by Executive Order Numbered 8743 of April 23, 1941.

An identical restriction has, to this date, been included in each Commission appropriation.[1] Thus, the Commission is barred from doing those things which previously fell under the authority of the Legal Examining Board. Subsection

---

[1]*See*, for example, Pub. L. 94-363, 90 Stat. 968-69, which reads in pertinent part as follows:

> No part of the appropriation herein made to the Civil Service Commission shall be available for the salaries and expenses of the Legal Examining Unit of the Commission established pursuant to Executive Order 9358 of July 1, 1943, or any successor unit of like purpose.

The reference to the "Legal Examining Unit of the Commission" rather than the Board of Legal Examiners was occasioned by Executive Order No. 9358, 3 CFR 256 (1943-1948 compilation), which vested the power of the Board in the Commission. Some Members of Congress had questioned whether the Board should be continued absent specific legislation. Thus, Executive Order No. 9358 transferred the Board's authority to the Commission "[p]ending action by the Congress with respect to the continuance of the Board." The 1943 appropriation restriction and subsequent restrictions, of course, barred further action by the Board.

3(d) of Executive Order No. 8743, 3 CFR 927·(1938-1943 compilation), set forth the functions of the Board as follows:

> The Board in consultation with the Civil Service Commission, shall determine the regulations and procedures under this section governing the recruitment and examination of applicants for attorney positions, and the selection, appointment, promotion, and transfer of attorneys in the classified service.[2]

Administering examinations was but one of the functions of the Board. It was also charged with establishing attorney selection procedures. The Commission's proposed rating system constitutes an attorney selection procedure because attorneys would be selected on the basis of their ratings. Therefore, the appropriation restriction precludes the Commission from requiring the rating system it proposes for attorney applicants.[3] Based on this, it may reasonably be argued that the Commission, in seeking to impose attorney selection procedures, is acting contrary to Congress' intent.[4]

The original debaters of the restriction did not fail to discern the implications of the appropriation restriction as it affects veterans' preference. Senator Burton stated:

> . . . if we cut off all civil service examination, it seems to me that we then throw the whole matter open, do away with veterans' preference, and create a position which is not sound. [90 Cong. Rec. 2660 (1944)]

---

[2] Section 1 of that Executive order placed most attorney positions in the classified service.

[3] This view is not altogether free from doubt. Senator McKellar, the sponsor of the restrictive provision, indicated that "[i]t merely provides that no part of the money herein appropriated shall be used for the purpose of conducting such [civil service] examinations." 90 Cong. Rec. 2661. Accordingly, it can be fairly argued that only the examination of attorneys was proscribed by the restriction. But compare the broader language of Senator McKellar at 90 Cong. Rec. 2660, stating that the Commission has no business in determining the "relative qualifications" of attorneys. *See also* Senator McKellar's assertion that the Commission has no business in saying "who shall be the lawyers of this Government." *Independent Offices Appropriation Bill for 1945: Hearing on H.R. 4070 before the Senate Subcommittee of the Committee on Appropriation,* 78th Cong., 2d sess., 343-44 (1944).

Therefore, the Commission's proposed rating system may be viewed as an examination and thus improper for that reason. The rating system, like an examination, would purport to objectively measure the abilities of attorneys and seek to gauge the "relative qualifications" of attorneys. As such it would be an "examination," as Senator McKellar used that term. Legal Examining Board "examinations" were not limited to written tests; that term was construed to include oral interviews as well. *To Create a Board of Legal Examiners in the Civil Service Commission: Hearing on H.R. 1025 before the House Committee on the Civil Service,* 78th Cong., 1st sess., 4 (1943) (Statement of Solicitor General Fahy, an ex-officio member of the Board).

[4] The Commission might argue that it is not imposing selection procedures, but that it is only requiring that agencies establish their own procedures. However, the Commission's purported power of approval or rejection of such procedures is tantamount to Commission imposition of selection procedures for attorneys.

Congress, in considering the 1944 restriction, rejected any Commission role in determining the "relative qualifications" of lawyers. 90 Cong. Rec. 2660 (remarks of Senator McKellar). The rating system, however, would result in the Commission doing just that.

And, again at 90 Cong. Rec. 2661, Senator Burton cautioned that the restriction:

> . . . would result in the return of lawyers to a patronage basis, making impossible the application to them of the veterans' preference provisions already in the statutes.

The only response to Senator Burton's cautionary statement was the suggestion that a legal examining board for all attorney applicants be established in the Department of Justice. Senator McKellar, 90 Cong. Rec. 2661 (1944). This, however, has never been done.

Thus, there is reason to doubt that the Commission may lawfully require an attorney rating system. As we mentioned above, 5 U.S.C. § 3320 requires that veterans' preference apply in the excepted service in the same manner as in the competitive service. However, attorney positions are unlike most others in the excepted service in that the Commission cannot remove them from the excepted service. Additionally, the restrictive appropriation provision casts doubt on the Commission's authority to require attorney-selection procedures.[5]

While the Commission's authority to enforce veterans' preference in attorney hiring may be dubious, the Department is bound to apply it in some fashion. In our opinion, it need not be applied through a numerical rating system; such a system for attorney hiring was considered and rejected as long ago as 1941. Thus, it was not viewed as essential to implementation of veterans' preference.

President Franklin D. Roosevelt, by Executive Order No. 8044, 3 CFR 456 (1938-1943 compilation) appointed a committee to study and make recommendations on civil service procedures. In February 1941 that committee submitted its report entitled *Report of the President's Committee on Civil Service Improvement*. H. Doc. 118, 77th Cong., 1st sess. (1941). The report stated two major views on attorney selection procedures—Plan A and Plan B.

Plan A recommended that attorneys be evaluated only to determine whether they were qualified for Federal service. If so, they would not be given a rating, but rather, all qualified applicants would be considered equally eligible for employment.

Plan B recommended, at least in the case of inexperienced attorneys, that they be examined and rated competitively.

The authors of Plan A reasoned:

> [I]t seems to us highly unwise to force the unique problem of the attorney positions into any general pattern simply for the sake of uniformity. Wise administration of the civil service, as of other oganizations, may often indicate the need for flexibility and ad hoc adjustments, even at the cost of uniformity and symmetry. . . .
>
> . . . We therefore have considered and presented our recommendations on the assumption that the attorney positions present a unique

---

[5]As further evidence that the Commission's authority to enforce the Veterans Preference Act in attorney hiring is unclear, the Commission until recently was of the view that it had no authority to enforce that Act in the excepted service at all. We limit our disagreement with Commission enforcement authority to attorney selection.

problem in the professional service, which must be solved individually rather than by application of a general formula. [H. Doc. 118, *supra,* at p. 32-33]

As well as recommending against a rating system for attorneys, Plan A recommended against applying the competitive service procedure of certifying three applicants to the appointing officer. 5 U.S.C. § 3318. It was stated by those urging Plan A that:

We feel that any mechanical ranking and certification would operate in an undesirably arbitrary manner, that the superior officer who is responsible for the appointee's work should have more voice in his selection, and that *no principle of civil service or wise administration requires that there be an assumption of absolute accuracy in rating the candidates all of whom by definition are qualified to do legal work of a high order. [Id.,* at 38] [Emphasis added.]

President Roosevelt adopted Plan A in Executive Order No. 8743, 3 CFR 927 (1938-1943 compilation). That order directed the Commission to establish a register of eligibles from which attorney positions were to be filled. And, § 3(F) of the order directed that:

. . . registers shall not be ranked according to the ratings received by the eligibles, except that persons entitled to veterans' preference . . . shall be appropriately designated thereon.

Thus, a rating system was not required. Preference eligibles, however, were designated on the register. Therefore, under Executive Order No. 8743, because no numerical ratings were used in the selection process, veterans' preference was implemented only by considering it a positive factor in the employment decision. At the present, veterans' preference is positively considered in Department employment decisions. If all other factors are equal, or even close, the preference eligible will normally be selected over the nonpreference eligible.

The Department will soon adopt new procedures whereby applicants interviewed through the Department's Honor Graduate Program for attorneys will be given scores based on nine employment factors. Five or ten veterans' preference points, where applicable, will be added to these scores. Based on the scores, applicants will then be evaluated as best-qualified, qualified, or unqualified. All best qualified applicants will be eligible for Department employment. However, the scores received in the Honor Program rating system will not be considered in the final selection process.

The Department will soon formalize its present policy and issue a directive requiring that the final attorney selection process consider veterans' preference as a positive factor. Thus, in the Honor Program the veteran will twice benefit from the application of preference.

This procedure has been proposed in the Honor Program on an experimental basis. We understand that if it proves to be an accurate indicator of desirable attorney applicants, the procedure may be expanded to other attorney hiring practices in the Department. Veterans' preference will remain a positive factor

183

in hiring attorneys with or without the proposed point system. We feel that this practice will give adequate effect to the Veterans Preference Act.

We conclude that our practice reasonably gives effect to the Veterans Preference Act. In responding to the Commission's request that we establish a numerical rating system, we question its authority to require such a system for attorneys. It would be appropriate to explain to the Commission our procedure of positively considering veterans' preference and the new procedure to be used in the Honor Program. If the Commission is satisfied with this, the question of its enforcement authority may be mooted.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*